IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

RANGER CONSTRUCTION INDUSTRIES, INC.,

                          Plaintiff,

v.                                           CASE NO.: 9:17-CV-81226-KAM

ALLIED WORLD NATIONAL ASSURANCE
COMPANY,

                          Defendant.

_____/

## ALLIED WORLD NATIONAL ASSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT II FOR DECLARATORY RELIEF

Defendant, ALLIED WORLD NATIONAL ASSURANCE COMPANY ("ALLIED WORLD"), by and through its undersigned counsel, hereby files its Motion for Summary Judgment on Count II for Declaratory Relief of the Amended Complaint filed by RANGER CONSTRUCTION INDUSTRIES, INC. ("RANGER"). In support thereof, ALLIED WORLD states as follows:

1.      On or around March 5, 2017, Jennifer Astaphan, as Personal Representative of the Estate of Jonathan R. Astaphan, filed suit against RANGER and multiple other defendants in relation to a fatal traffic accident occurring on May 28, 2015 ("the underlying matter").

2.      Between October 2, 2017, and October 26, 2017, the underlying matter was tried, ultimately resulting in a jury verdict awarding Ms. Astaphan $20,000,000 in compensatory damages and awarding punitive damages directly against RANGER in the amount of $25,000,000 ("the Astaphan verdict").

3. On December 15, 2017, RANGER filed an Amended Complaint against ALLIED WORLD in the instant action. [DE 12]. In Count II of RANGER's Amended Complaint, RANGER seeks a declaration that "[t]he Astaphan verdict is a covered loss under the AWAC Policy" and that "AWAC is obligated to pay the entire Astaphan verdict entered against Ranger or the amount of final judgment that is entered, including for punitive damages." [*See* DE 12 at pp. 13-14].

4. ALLIED WORLD is entitled to entry of summary judgment on Count II of RANGER's Amended Complaint as it relates to RANGER's request for a declaration of coverage for the punitive damages award entered directly against RANGER.

5. Following the Florida Legislature's 1999 amendment to Fla. Stat. § 768.72, Florida law no longer allows a trier-of-fact to impose punitive damages against an employer based on a theory of vicarious liability. Therefore, regardless of whether the jury found RANGER liable for punitive damages under Subsection (2) or (3) of § 768.72, the jury must have based its punitive damages award on RANGER's own punitive misconduct, which must have risen to a level of either gross negligence or active and knowing participation in its employee's intentional misconduct or gross negligence. [*See* Jury Instructions at DE 74-12].

6. The evidence and testimony introduced to the jury during the underlying action demonstrates that the jury's award of punitive damages against RANGER for RANGER's own gross negligence was imposed as a punishment and deterrent. As set forth more fully below, the transcript from the underlying trial is replete with examples of counsel for the plaintiff in the underlying matter imploring the jury to specifically hold RANGER accountable for its own conduct, which they argued was "beyond negligent." [*See* Trial Transcript, at DE 91-2 at pp. 1384-85]. Ms. Astaphan's counsel even went as far as to direct the jury to use punitive damages

against RANGER as a means of punishment in order to deter such conduct in the future. [*Id.*]. It is this argument and testimony on which the jury based its verdict, and it is indisputable that the argument presented to the jury in this regard reflects the precise means and purpose for entering an award of punitive damages directly against a party for their own punitive misconduct.

7.      Furthermore, the jury's verdict rendered in the underlying case indisputably reflects an award of direct punitive damages against RANGER, as well as a separate award of punitive damages against Juan C. Calero. The jury specifically found that RANGER itself was grossly negligent, as is required under Fla. Stat. § 768.72 for an award of direct punitive damages. [*See* Underlying Verdict at DE 74-3]. Furthermore, notably absent from the jury's verdict is any indication that the jury intended to base its award of punitive damages against RANGER on the conduct of its employee, Juan C. Calero. [*Id.*]. In fact, the jury specifically found that punitive damages were warranted against RANGER by clear and convincing evidence, as is also required under Fla. Stat. § 768.72(2) for an award of direct punitive damages, and the jury assessed RANGER's net worth in arriving at a figure of $25,000,000 in order to punish RANGER for its punitive conduct. [*Id.*].

8.      Because Florida law provides that punitive damages awarded on the basis of a party's own misconduct that surpasses mere mistake or negligence is not insurable as a matter of public policy, the punitive damages award entered directly against RANGER is not insurable as a matter of law. *See Herendeen v. Mandelbaum*, 232 So.3d 487, 492 (Fla. 2d DCA 2017).

**WHEREFORE,** ALLIED WORLD NATIONAL ASSURANCE COMPANY respectfully requests that this Honorable Court enter an Order granting ALLIED WORLD's Motion for Summary Judgment as to Count II of RANGER's Amended Complaint and granting such further relief this Court deems just and proper.

## I.   STANDARD OF LAW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Initially, the burden is on the moving party to "show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial." *Mullins v. Crowell*, 228 F. 3d 1305, 1313 (11th Cir. 2000). Once the moving party has satisfied its burden, the burden shifts to the nonmoving party, who must show "that summary judgment would be inappropriate because there exists a material issue of fact." *Id.* Summary judgment for the moving party should be granted when the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a genuine issue of material fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson, 477 U.S. at 252). Further, the interpretation of an insurance contract is inherently a question of law. *See James River Ins. Co. v. Ground Down Engineering, Inc*., 540 F.3d 1270, 1274 (11th Cir. 2008).

## II.   FLORIDA FOLLOWS THE GENERAL RULE THAT PUNITIVE DAMAGES ARE NOT INSURABLE.

"Florida law does not allow indemnification against punitive damages." *Herendeen v. Mandelbaum*, 232 So.3d 487, 492 (Fla. 2d DCA 2017)(citing *Queen v. Clearwater Elec., Inc.*, 555 So.2d 1262, 1266 (Fla. 2d DCA 1989)("Florida public policy prohibits liability insurance coverage for punitive damages assessed against a person because of his wrongful conduct.")); *see also Nicholson v. American Fire & Cas. Ins. Co*., 177 So.2d 52 (Fla. 2d DCA 1965); *see also Northwestern National Cas. Co. v. McNulty*, 307 F.2d 432 (5th Cir. 1962). "The purpose of

punitive damages is, as the name indicates, to punish one whose wrongdoing surpasses mere mistake, negligence or thoughtlessness and to deter others from similar misconduct." *U.S. Concrete Pipe Co. v. Bould*, 437 So.2d 1061, 1066 (Fla. 1983) (Ehrlich, J., concurring). "If the burden of paying that penalty may be shifted to an insurer (and ultimately to society at large), the wrongdoer has no impetus to 'learn his lesson' and change his behavior." *Id.* at 1066.

The limited exception to this rule previously arose in circumstances where an employer was held vicariously liable for punitive damages for the willful, wanton, or malicious actions of an employee acting within the course and scope of employment. S*ee Traveler Indem. Co. v. Despain*, 2006 WL 3747318, *3 (M.D. Fla. 2006). More specifically, decades ago, Florida juries could impose punitive damages against employers solely based upon the employer-employee relationship without considering the employer's independent conduct. *See Nichols v. McGraw,* 152 So.2d 486 (Fla. 1st DCA 1963). Thus, the limited exception to the proscription against insuring punitive damages applied only because vicariously awarded punitive damages were not imposed to punish or deter the conduct of the employer. *See Despain,* 2006 WL 3747318, *3 (M.D. Fla. 2006)("Florida's public policy does not preclude insurance coverage of punitive damages **when the insured himself is not personally at fault**, but is merely vicariously liable for another's wrong.")(emphasis added). "The rationale underlying this exception is obvious. When an employer's liability for punitive damages arises solely from the fact that he relies upon employees, there can be no action to punish or deter." *Bould*, 437 So.2d at 1066 (Fla. 1983) (Ehrlich, J., concurring).

In 1981, the Florida Supreme Court decided *Mercury Motors Express, Inc. v. Smith*, 393 So.2d 545 (Fla. 1981), which held that "before an employer may be held vicariously liable for punitive damages under the doctrine of *respondeat superior*, there must be some fault on his

part." *Id.* at 549. Thus, for some time (before Florida's 1999 Tort Reform Act), a finder-of-fact could impose vicarious punitive damages against an employer based on the willful and wanton misconduct of an employee acting in the course and scope of employment when there was "some fault" on the part of the employer which foreseeably contributed to the plaintiff's injury. *See id.*

The Florida Supreme Court in *Mercury Motors* clarified that "although the misconduct of the employee, upon which the vicarious liability of the employer for punitive damages is based, must be willful and wanton, it is not necessary that the fault of the employer, independent of his employee's conduct, also be willful and wanton." *Id.* In such cases, where punitive damages were assessed against an insured-employer based solely on vicarious liability, the vicarious punitive damages were still insurable because "'[s]ome fault' does not necessarily rise to the level of misconduct for which society demands punishment and deterrence." *Bould*, 437 So.2d at 1066 (Ehrlich, J., concurring).

The Florida Supreme Court further clarified what was entailed by an employer having "some fault" with respect to liability for vicarious punitive damages in *Schropp v. Crown Eurocars, Inc.*, 654 So. 2d 1158 (Fla. 1995). In *Schropp*, the Florida Supreme Court emphasized that under a theory of vicarious liability for punitive damages, it was "not necessary for the plaintiff to establish that the corporate employer acted with the same heightened culpability as the employee to allow punitive damages." *Id.* at 1160. Rather, all that was required was a showing of "**ordinary negligence** on the part of the corporate employer." *Id.* (emphasis added).

The foregoing makes clear that the level of employer conduct for vicarious punitive damages following the *Mercury Motors* decision, requiring "some fault" did not entail that the employer's conduct amount to conduct warranting punitive damages itself. Clearly, ordinary negligence was not the type of conduct which society or courts have seen necessary to punish

and deter through punitive damages; thus, it is apparent why this standard for vicarious liability remained insurable under Florida law.

In 1999, the Florida legislature amended Fla. Stat. § 768.72 to allow recovery of punitive damages against a defendant based on clear and convincing evidence of "intentional misconduct" or "gross negligence." 1999 Fla. Laws, ch. 99-225, § 22.  Specifically, Fla. Stat. § 768.72(2) (2018) provides that:

> A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

Further, and more importantly, the Florida legislature abolished the imposition of purely vicarious punitive damages through its amendment of § 768.72(3) by establishing "a heightened standard for imposing punitive damages on an employer rather than adopting the common law rules of agency and vicarious liability." *HCA Health Services of Florida, Inc. v. Byers-McPheeters*, 201 So.3d 669 (Fla. 4th DCA 2016) (citing *Coronado Condo. Ass'n, Inc. v. La Corte*, 103 So.3d 239, 241 (Fla. 3d DCA 2012)). Stated otherwise, § 768.72(3) eliminated the option of imposing vicarious punitive damages based on the employer having only "some fault" –or ordinary negligence—and instead specifically requires affirmative, punitive conduct on the part of an employer to warrant punitive damages directly against that employer. Therefore, because Fla. Stat. § 768.72(3) requires a high standard of punishable conduct from an employer that society would seek to punish and deter through punitive damages, damages awarded under this Subsection are not insurable under Florida law.

Because punitive damages awarded under Fla. Stat. § 768.72 are not insurable under Florida law, Count II of RANGER's Amended Complaint fails. Therefore, ALLIED WORLD is entitled to entry of summary judgment on Count II of RANGER's Amended Complaint, because

as a matter of law, there can be no coverage for the punitive damages award rendered directly against RANGER under the ALLIED WORLD Policy.

### III.    FLORIDA STATUTE § 768.72 PROVIDES THAT ALL PUNITIVE DAMAGES AWARDED AGAINST AN EMPLOYER UNDER ANY OF ITS SUB-SECTIONS ARE DIRECT PUNITIVE DAMAGES, NOT VICARIOUS.

ALLIED WORLD is entitled to summary judgment on the issue of coverage because Florida law no longer allows a trier-of-fact to impose punitive damages against an employer based on a theory of vicarious liability; therefore, there can be no insurance coverage for the punitive damages award rendered against RANGER in the underlying case. Rather, following the Florida Legislature's 1999 Tort Reform Act, the only means of awarding punitive damages against an employer based on the conduct of an employee or agent requires a trier-of-fact to find a high level of culpable conduct on the part of that employer, corporation, or legal entity. In effect, the 1999 Tort Reform Act extinguished a Florida jury's option to impose punitive damages against a corporation based *solely* on vicarious liability.

Specifically, in 1999, the Florida Legislature added Subsection (3) to Section 768.72, Florida Statutes.  "Under section 768.72(3), the legislature established a heightened standard for imposing punitive damages on an employer rather than adopting the common law rules of agency and vicarious liability."  *Byers-McPheeters*, 201 So.3d 669 (Fla. 4th DCA 2016) (citing *Coronado Condo. Ass'n, Inc. v. La Corte*, 103 So.3d 239, 241 (Fla. 3d DCA 2012)).

Fla. Stat. § 768.72(3) provides, in its entirety, that:

In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:

(a)   The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;

(b)   The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or

(c)   The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

Notably, nowhere in Fla. Stat. § 768.72(3), or at any place in the statute, are the words vicariously liability used in any context. This is because the statute allows only for the direct imposition of punitive damages against an employer or corporation for the conduct of an employee when the trier of fact finds that the employer, principal, or corporation has also committed gross negligence, participated in the employee's intentional misconduct or gross negligence, or condoned and ratified such conduct by the employee. Fla. Stat. § 768.72(3)(a),(b), & (c). The Florida Legislature is well aware of how to use specific words and phrases, such as vicarious liability, and how to place such phrases in a statute when that is their intent. "The Legislature's intent must be determined primarily from the language of the statute." *Rollins v. Pizzarelli*, 761 So.2d 294, 297 (Fla. 2000). In this case, the Florida Legislature omitted the phrase vicarious liability from Fla. Stat. § 768.72 because the legislature intended to eliminate the imposition of purely vicarious punitive damages. Following the 1999 amendment, an award of punitive damages under Fla. Stat. § 768.72(3) requires punitive conduct on the part of the employee and a finding that the employer engaged in or ratified such punitive conduct warranting the imposition of punitive damages directly against the employer.

Specifically, subsection (3)(a) requires that the employer "actively and knowingly participated" in the employee's gross negligence or intentional misconduct. Fla. Stat. § 768.72(3)(a). In essence, this standard requires that the employer engage in the same conduct that warrants punitive damages against the employee under Section (2). This is clearly a direct

liability standard.  "Active and knowing participation" is not, and has never been, a theory of vicarious liability. Under this subsection, punitive damages are being awarded directly against the employer for its own misconduct, in conjunction with the employee's misconduct, when the employer actively and knowingly takes part in conduct which is punitive in nature.

Similarly, Subsection (3)(b) requires "[t]he officers, directors, or managers of the employer, principal, corporation, or other legal entity" to "knowingly condone, ratify, or consent to such conduct."[1] Fla. Stat. § 768.72(3)(b).  Again, this is not a theory of vicarious liability. Under Subsection (3)(b), punitive damages are awarded against the employer because the employer is directly and knowingly condoning or approving of the employee's gross negligence or intentional misconduct. When a company's directors or officers knowingly condone or consent to employee conduct that is punitive in nature, those officers or directors have ratified that conduct on behalf of the company, regardless of whether they physically acted to carry out the act themselves. This is direct liability.

Finally, Subsection (3)(c) provides that the employer must have "engaged in conduct that constituted gross negligence … that contributed to the loss, damages, or injury suffered by the claimant."  Thus, Subsection (3)(c) requires the employer to itself engage in conduct that amounts to "gross negligence" as defined under Subsection (2)(b) before punitive damages may be imposed against that employer.  Subsection (2)(b) defines "gross negligence" to mean that "the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct."  Fla. Stat. § 768.72(2)(b).  Therefore, at a minimum, an employer must be "personally guilty" of "gross negligence" under Subsection (2)(b) to be found liable for punitive damages based on the

---

[1] Absent from the Jury Instructions provided in the underlying matter were instructions pertaining to the standard of conduct for imposition of punitive damages under Fla. Stat. § 768.72(3)(b). [*See* DE 74-12]. The jury was only instructed on the standards articulated under § 768.72(3)(a) and (c). [*See* DE 74-12].

acts of its employee under Subsection (3), and the employer's gross negligence must have actually contributed to the loss or injury that forms the basis of the claim for punitive damages. Under no reasonable interpretation could the imposition of punitive damages against an employer based on an employer's own gross negligence, which tangibly contributed to the subject loss, be regarded as vicariously awarded.

Therefore, because Section (3) requires that the employer knowingly or actively participated in the punitive conduct, knowingly ratified or consented to the conduct, or itself acted with gross negligence, Fla. Stat. 768.72 provides only for the imposition of punitive damages directly against an employer either under Section (2) for their own "intentional misconduct" or "gross negligence" or under Section (3) when the employee's punitive conduct is essentially inseparable from the acts of the employer.

Accordingly, pursuant to longstanding and well-settled Florida law, any award of punitive damages under Fla. Stat. 768.72 is not insurable as a matter of law. "Florida public policy prohibits liability insurance coverage for punitive damages assessed against a person **because of his wrongful conduct."** *Queen*, 555 So.2d at 1266 (Fla. 2d DCA 1989). Here, regardless of whether the jury found RANGER liable under Section (2) or (3) of Fla. Stat. 768.72, the conduct that formed the basis of the punitive damage award certainly implicated RANGER's own punitive conduct. Furthermore, the type of conduct for which an employer may be directly liable for punitive damages under Fla. Stat. 768.72 certainly rises to the level of conduct which society seeks to punish and deter with the imposition of punitive damages. Therefore, RANGER may not pass the burden of paying its penalty to an insurer when RANGER's own gross negligence or culpable conduct warranted the imposition of direct punitive damages.

IV.     **THE JURY IN THE UNDERLYING CASE FOUND RANGER LIABLE FOR DIRECT PUNITIVE DAMAGES BY CLEAR AND CONVINCING EVIDENCE.**

A review of the trial transcripts from the underlying matter, as well as the arguments and statements presented to the jury therein, make it abundantly clear that Ms. Astaphan's counsel asked the jury to hold RANGER liable for its own punishable conduct—the type of misconduct which cannot be insured under Florida law. It was this argument and testimony on which the jury found by clear and convincing evidence that RANGER's gross negligence warranted the imposition of punitive damages against RANGER in the amount of $25,000,000.

A.      **Ms. Astaphan's counsel's opening statement clearly evinced Ms. Astaphan's intent to seek an award of direct punitive damages against RANGER for RANGER's own conduct.**

Throughout the opening statement in the underlying case, Ms. Astaphan's counsel explained why RANGER's conduct warranted an award of punitive damages:

> [On] May 2014, Ranger starts its construction project. Ranger Construction soon learns that its construction vehicles are making unsafe entries and exits to get on and off the highway. Motorists complain. The FDOT complains. Ranger's project manager, he knows about it. In response Ranger writes a memo but does not deliver it to all truck drivers who work at that site. Ranger writes a couple of e-mails to its subcontractors and to its supervisors about this problem, and it fires a few truck drivers. But the problem doesn't go away.
>
> Ranger takes no other steps to investigate whether its MOT system is working safely, whether its supervisors are properly communicating, or whether its supervisors are giving sufficient priority to the MOT enforcement and safety.  The problems and complaints continue all the way up until the week of May 20th, 2015.

[*See* Trial Transcript at DE 91-2, p. 1369-70].

Ms. Astaphan's counsel then explained their case theory on why they were suing RANGER:

> The simple truth is closing a lane saves lives. We are suing Ranger Construction for several reasons. The first reason we are suing Ranger Construction is because Ranger violated Highway Safety Rule No. 1: Highway construction companies

must provide safe exits for their construction vehicles. Ranger violated Highway Safety Rule No. 1 by deciding at the last minute to put Calero pointing north in the median loading up to 80,000 pounds, expecting him to go south with no safe plan to get him off.

[*Id.* at p. 1383].

Ms. Astaphan's counsel further told the jury that RANGER's conduct warranted punitive damages because RANGER's conduct was "beyond negligent", that RANGER "knowingly and actively participated in the conduct of Juan Calero", and Astaphan's counsel specifically urged the jury to use the award of punitive damages against RANGER as a deterrent against this type of conduct in the future:

> You will hear that **Ranger Construction was beyond negligent here**. This was a type of **gross negligence for which punitive damages are needed to be certain that Ranger and anyone else in this industry will never, ever let this happen again**.
>
> First, **Ranger knowingly and actively participated in the conduct of Juan Calero**.
> …
> Ranger prepared this fire, and its negligent conduct was burning for months before this happened. Last-minute decisions, no regard for safety, no plan.
> …
> You will hear that Ranger knew. It knew what was going on. It received complaints, and it's Ranger's responsibility. We are suing Ranger Construction for all of those above reasons and for one more. Of the parties involved in this particular case, **Ranger is the one most able to prevent this from ever happening again. Not just back then, but now and into the future.**

[*Id.* at p. 1384-86](emphasis added).

Ms. Astaphan's counsel specifically argued to the jury that RANGER's "gross negligence" is the type "for which punitive damages are needed" as a deterrent. [*Id*.]. It is indisputable that the statements presented to the jury in this regard reflect the means and purpose for entering an award of punitive damages directly against a party for their own actions. There is no reasonable debate that imploring the jury to punish RANGER for its gross negligence reflects

Ms. Astaphan's intent to seek an award of direct punitive damages against RANGER. It is this

argument and reasoning on which the jury based its decision to enter the award of direct punitive

damages against RANGER.

> **B.  Ms. Astaphan's counsel's closing argument provided further basis for the jury to render an award of punitive damages directly against RANGER for RANGER's conduct.**

During her closing argument in trial of the underlying matter, Ms. Astaphan's counsel

consistently presented argument to the jury regarding RANGER's gross negligence and

conscious disregard and indifference to human life in support of her request for punitive damages

levied directly against RANGER. Specifically, Ms. Astaphan's counsel made the following

statements to the jury during closing argument:

> When you, as a highway construction company [Ranger Construction] do what they did, create this kind of a scenario, **actively and knowingly participate in it, show indifference to human life and safety** for months leading up to this, not acknowledge on the witness stand as a company or as an individual that this is inherently dangerous activity, and to be flippant about it that the next day you're going to launch these vehicles and continue to launch them into the highway like that.

[*See* DE 91-2, p. 236 (3567)] (emphasis added).

Indeed, Ms. Astaphan's entire case theory was about RANGER's "system failure" and

RANGER's "conscious disregard and indifference to human life":

> This case is about an utter system failure.  A system that barely existed for making sure that a thing like this would never, ever happen. … But before it became a system failure, it became a disturbing degree of **corporate indifference**, of **conscious disregard and indifference to human life**.

[*Id.* at p. 3079] (emphasis added).

Ms. Astaphan's counsel also told the jury that RANGER was directly responsible for the

death of Jonathan Astaphan:

Mr. Calero, what he did was reckless. **But the table was set by his employer that night**, the people that were supervising him, Ranger Construction.

…

That is what we call actively and knowingly participating in conduct. Mr. Calero drove the tractor across the road, but it didn't just start and end with that move. **Ranger Construction and Mr. Scarberry set the table for him, and they actively and knowingly participated in his conduct.**

…

And the combination of this series of steps one after the next, where people are just consciously indifferent to the risk, is why we're here. And now we've got to figure out what we're going to do about it. … [C]haos begets chaos if you don't have a plan and you're not organized.

[*Id.* at p. 3079-84].

Ms. Astaphan's counsel further explained that RANGER acted like an "indifferent machinery of industry and construction" seeking profits in a "business venture that puts pressure to build and move and get equipment here and there." [*Id.* at p. 3085]. "[T]his is big money stuff. They're very proud and honored to be working in that business. And then they forget how important it is. How much risk they're putting out there." [*Id.* at p. 3085].

Furthermore, when Ms. Astaphan's counsel explained the verdict form, he again argued that RANGER was "beyond negligen[t]." [*Id.* at p. 3107]. And when he instructed the jury to apportion 50% fault to both RANGER and Juan Calero, he reiterated that "Ranger set the table":

"State the percentage of any negligence which is the legal cause of the death of Jonathan R. Astaphan that you charge."

And we suggest it's 50/50. **Ranger set the table. Ranger actively and knowingly participated in this conduct.**

[*Id.* at p. 3110].

When Ms. Astaphan's counsel discussed the verdict form on punitive damages, he made it clear that RANGER was grossly negligent, and he plainly asked the jury to make that finding clear to RANGER by finding RANGER liable for direct punitive damages:

> Under the Circumstances of this case, whether you find by clear and convincing evidence that punitive damages are warranted against Juan Calero, **and the same question against Ranger Construction.**
>
> That's what you do when there's gross negligence. That's what you do when you want to make sure. And when you do this, **now you're talking about not just deterrence but punishment to make sure that this will not just happen** – not happen on I-75, but not happen anywhere – not in this country, **not with Ranger** —— never, ever happen.  Make it crystal clear.

[*Id.* at p. 3120].

Ms. Astaphan's counsel made it crystal clear to the jury that they had been asked to use punitive damages as a "punishment" against RANGER and as a "deterrent" to RANGER and other construction companies in the industry. To eliminate any doubt that Ms. Astaphan sought direct punitive damages against RANGER, Ms. Astaphan's counsel concluded his closing argument by again telling the jury that RANGER was indifferent and grossly negligent.  Ms. Astaphan's counsel even listed the reasons on which the jury could find that RANGER's conduct warranted an imposition of direct punitive damages:

> **And Ranger is responsible like Calero.** Why? Because they created it. They actively and knowingly participated. If you put a list together of all the things that Ranger did – putting him there at nighttime, putting him there pointed north, putting him there with nine concrete barriers, putting him there without a lane closure, leading up to taking an adverse position to the motoring public and the truck drivers and never caring to do anything more out of corporate indifference to the life and safety – **Ranger itself has indifference and gross negligence.**
>
> And it's also responsible for Mr. Calero because it actively and knowingly participated in making this happen.
>
> It's time to tell them and Mr. Calero that this can't be tolerated. This can't be tolerated in our society.  Thank you.

[*Id.* at p. 3120-21].

As clearly evidenced by the foregoing, the focus of Ms. Astaphan's counsel's argument in closing was not on the conduct of Juan C. Calero or how RANGER should be vicariously

liable for Mr. Calero's gross negligence. Rather, the clear intent of Ms. Astaphan was to invite the jury to enter an award against RANGER as a punitive measure for RANGER's "conscious disregard and indifference to human life" and for RANGER's "gross negligence" and "active and knowing participation" in conduct warranting punitive damages. It is beyond dispute that theories of *respondeat superior* and vicarious liability do not consist of accusations of the employer's conscious disregard and indifference to human life, nor do such theories require active and knowing participation in punitive conduct. The argument, evidence, and testimony presented to the jury in trial of the underlying matter specifically called upon the jury to enter a punitive damages award directly against RANGER for their own misconduct as a means of punishment for that conduct, and it was on this basis that the jury rendered its verdict.

**C.     Based on the argument and evidence presented, as well as the jury instructions, the *Astaphan* jury returned a verdict finding that RANGER was directly liable for punitive damages.**

At the end of the underlying trial, the Court's instructions to the jury closely tracked the requirements of Fla. Stat. § 768.72(3)(a) & (c) for the imposition of direct punitive damages against an "employer." [*See* Doc. 74-12]. Specifically, the jury instructions included the following statutory language that reflects the employer's direct liability, rather than indirect or vicarious liability:

A.     Ranger Construction Industries, Inc. actively participated and knowingly participated in such conduct of Juan C. Calero; or

B.     Ranger Construction Industries, Inc. engaged in conduct that constituted gross negligence and that contributed to the death of Jonathan R. Astaphan.

[DE 74-12]. Additionally, the trial transcript reflects that the jury received the following instruction regarding Plaintiff's direct liability for punitive damages:

17

> Ms. Astaphan claims that punitive damages should be awarded against Juan Calero for his gross negligence and against Ranger Construction Industries, Inc. [Plaintiff] for its active and knowing participation in Juan Calero's gross negligence or its gross negligence or both."

[*See* Doc. 74-13 at p. 3]. The jury concluded that RANGER was 50% at-fault (directly liable) for the wrongful death of Jonathan Astaphan, with 50% also allocated to Juan Calero. [DE 74-3].

Perhaps most importantly, the jury answered "Yes" to the question of whether "[u]nder the circumstances of this case, state whether you find **by clear and convincing evidence** that punitive damages are warranted against RANGER CONSTRUCTION INDUSTRIES." (Question #11). [DE 74-3](emphasis added). The jury separately answered "Yes" in response to the inquiry regarding whether punitive damages were warranted against Juan C. Calero. (Question #10). [*Id.*]. Thus, through its answer on almost identical verdict interrogatories, the jury specifically found by clear and convincing evidence that punitive damages were specifically warranted directly against RANGER, as well as RANGER's employee, Juan C. Calero. These verdict questions and the jury's answers to these questions are significant. The requirement that punitive damages can be awarded only upon a showing of "clear and convincing evidence" is not found in § 768.72(3). Rather, the "clear and convincing evidence" standard is found only under Fla. Stat. § 768.72(2), which permits an award of punitive damages directly against a defendant for that defendant's "intentional misconduct" or "gross negligence." Clearly, the jury awarded punitive damages against RANGER based on its own punitive conduct.

Ultimately, the verdict form contained the names of both defendants – RANGER and Juan Calero – and allowed for the direct imposition of punitive damages against each based on their respective net worth. [*Id.*]. Specifically, the jury found that $25,000,000 in punitive damages should be assessed directly against RANGER, and that an award of $5,000 in punitive damages should be assessed directly against Juan C. Calero. [*Id.*]. Common sense and logic

18

dictate that by entering **separate awards** for **separate amounts** against RANGER and Juan C. Calero, the jury did not intend to find RANGER vicariously liable for the punitive award entered against Juan Calero. Rather, the jury specifically assessed RANGER's net worth in order to ascertain an amount of punitive damages appropriate to punish RANGER for its own misconduct based on its own financial status wholly independent from Juan C. Calero's financial status. Further, notably absent from the jury's verdict is any indication that the jury intended to base its award of punitive damages against RANGER on the conduct of Juan C. Calero.[2]

The jury's verdict rendered in this case indisputably reflects an award of direct punitive damages against RANGER, as well as a separate award of direct punitive damages against Juan C. Calero. In entering punitive damages directly against RANGER, the jury specifically found that punitive damages were warranted against RANGER for its misconduct by clear and convincing evidence. RANGER cannot escape responsibility for its own actions and conduct by attempting to couch the jury's award of punitive damages as vicarious when the jury clearly and explicitly considered RANGER's conduct and net worth in entering such an award as a means of deterrent and punishment against RANGER.

Summary judgment should be entered in favor of ALLIED WORLD as to Count II of RANGER's Amended Complaint for Declaratory Relief because RANGER cannot put forth even a scintilla of evidence to support their claim that the jury's award of punitive damages against RANGER was only vicariously based on the conduct of Juan C. Calero rather than RANGER's own gross negligence. Furthermore, and more importantly, there can be no coverage for the punitive damages award as a matter of law, as Fla. Stat. § 768.72 does not provide a means for an award of vicarious punitive damages, and punitive damages rendered based on a

---

[2] To the extent that RANGER contends it was held vicariously liable for the conduct of its employee, Juan C. Calero, that liability is limited to the $5,000 punitive damages award assessed against Juan C. Calero. That amount could not include the $25,000,000 punitive damages award separately entered directly against RANGER.

party's own punishable conduct are not insurable under Florida law. Accordingly, ALLIED WORLD is entitled to summary judgment on Count II of RANGER's Amended Complaint.

## V.      CONCLUSION

ALLIED WORLD is entitled to judgment as a matter of law on Count II of RANGER's Amended Complaint for Declaratory Relief. As a matter of law, there is no coverage for the punitive damages award rendered against RANGER in the underlying action.

It is indisputable that the underlying jury's punitive damage award of $25,000,000 was assessed directly against RANGER based on RANGER's own misconduct. Specifically, the argument and testimony presented to the jury focused on RANGER's gross negligence, conscious indifference and disregard for human life. Ms. Astaphan's counsel specifically invited the jury to render an award of punitive damages directly against RANGER as a means of punishment for RANGER's gross negligence and as a deterrent to this type of misconduct. Based on the information presented to the jury in the underlying matter, the jury specifically found, by clear and convincing evidence, that punitive damages were warranted against RANGER. Accordingly, the jury assessed RANGER's net worth in order to determine a punitive damage amount suitable to punish RANGER for its actions based on RANGER's financial worth.

Fla. Stat. § 768.72 does not provide a means for recovery of vicarious punitive damages. Thus, any award of punitive damages awarded pursuant to § 768.72 is uninsurable, because, at a minimum, the statute requires that an employer act grossly negligent itself, knowingly or actively participate in behavior that constitutes intentional misconduct or gross negligence, or that the officers of the company knowingly ratify or consent to the intentional misconduct or gross negligence of the employee. The foregoing conduct is precisely the type which society seeks to punish and deter through direct imposition of punitive damages.

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 2nd day of October 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/ B. RICHARD YOUNG</u>
**B. RICHARD YOUNG**
Florida Bar No.: 442682
ryoung@flalawyer.net
**MICHAEL T. BILL**
Florida Bar No.: 997722
mbill@flalawyer.net
**ADAM A. DUKE**
Florida Bar No.: 55734
aduke@flalawyer.net
**MEGAN ALEXANDER**
Florida Bar No.: 58883
malexander@flalawyer.net
**RICHARD A. WELDY**
Florida Bar No.: 111811
rweldy@flalawyer.net
Young, Bill, Boles, Palmer & Duke, P.A.
One Biscayne Tower, Suite 3195
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 222-7720
Facsimile: (305) 492-7729
Attorneys for Defendant

**SERVICE LIST**
**RANGER CONSTRUCTION INDUSTRIES, INC vs. ALLIED WORLD NATIONAL**
**ASSURANCE COMPANY**
**CASE NO.: 9:17-CV-81226**


**WALTER J. ANDREWS, ESQ.**
**ANDREA L. DEFIELD, ESQ.**
**DANIEL HENTSCHEL, ESQ.**
**Hunton & Williams LLP**
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Wandrews@HuntonAK.com
Adefield@HuntonAK.com
Dhentschel@HuntonAK.com