UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 17-81226-CIV-Marra/Matthewman

RANGER CONSTRUCTION INDUSTRIES, INC.,

    Plaintiff,

vs.

ALLIED WORLD NATIONAL ASSURANCE COMPANY,

    Defendant.

_____/



FILED BY _____ D.C.

FEB 05 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

# AMENDED[1] ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL [DE 185]

**THIS CAUSE** is before the Court upon Defendant, Allied World National Assurance Company's ("Defendant") Motion to Disqualify Plaintiff's Counsel ("Motion") [DE 185]. This matter was referred to the undersigned by United States District Judge Kenneth A. Marra. *See* DE 188. Plaintiff, Ranger Construction Industries, Inc. ("Plaintiff") filed a response [DE 190], and Defendant filed a reply [DE 197].

## I.     Evidentiary Hearing

The Court held an evidentiary hearing and oral argument on the Motion on January 28, 2019, and January 29, 2019. The Court made its findings in open court and orally denied the Motion on January 29, 2019. In reaching its decision to deny the Motion, the Court considered the Motion, response, reply, the sealed transcript and exhibits from the deposition of Defendant's

---

[1] The Court's February 4, 2019 Order [DE 216] is solely amended to correct a scrivener's error on page five. *See* f.n. 4, *infra*.

1

Rule 30(b)(6) designee Christopher Finneran [DE 195], the 10 attorney-client privileged documents provided to the Court for *in camera* review, the parties' hearing exhibits [DEs 203, 209, 211, 212, 213], the testimony of Richard Weldy, Esq., and Walter Andrews, Esq., the argument of the parties, and the entire docket in this case. This Order is intended to adopt the Court's oral findings and rulings and elaborate on them.

Defendant initially moved for disqualification of Plaintiff's counsel, Hunton Andrews Kurth, on the basis that (1) defense counsel inadvertently disclosed seven attorney-client privileged documents—letters and emails—between Fowler White, Defendant's coverage counsel in the underlying state case and Defendant, and that (2) Plaintiff's counsel, upon receipt of those seven attorney-client privileged documents, allegedly failed to abide by Federal Rule of Civil Procedure 26 and Rule 4-4.4 of the Rules Regulating the Florida Bar. At the January 28, 2019 hearing, defense counsel explained that an additional three attorney-client privileged documents that were internal to Defendant and discussed the legal advice or legal opinions provided to Defendant by Defendant's current counsel in this federal case had also been inadvertently disclosed to Plaintiff. Thus, the Court addressed a total of 10 attorney-client privileged documents produced by Defendant to Plaintiff in regard to the Motion for Disqualification.

The Court separated the evidentiary hearing and oral argument into four issues, with Issues III and IV being deemed interrelated, as is suggested by the relevant case law. The Court made individual findings and rulings as to each of the four issues. Those findings and rulings are adopted as orally made in open court on January 28 and January 29, 2019, and they are further discussed below and elaborated upon in this Order.

## II. Overview

The facts underlying this disqualification motion establish that, unfortunately, lawyers on

both sides of the litigation acted poorly.

At the heart of this dispute is a disappointing but obvious inability of opposing counsel in this case to talk and correspond with each other in good faith, to rely on each other's representations, and to deal honestly and squarely with one another. From its inception, this case has been replete with numerous and extensive discovery disputes, myriad motions, lengthy hearings, and finger-pointing by opposing counsel against each other for various alleged bad acts. The Court does not know if this conduct and mistrust is based upon past dealings between counsel or due to other factors, but the attorneys should be aware that their conduct is not helping their respective clients' positions in this litigation. In fact, it is downright unproductive and silly.

In specific reference to the disqualification motion, it is clear to the Court what transpired here. Defendant's counsel, rushing in advance of the upcoming 2018 Christmas holiday and certain looming discovery deadlines, inadvertently produced 10 attorney-client privileged documents out of a total of approximately 14,500 discovery documents produced on December 20, 2018. That very large discovery production was reviewed by Plaintiff's counsel over the Christmas holiday, and on December 28, 2018, just before the New Year's holiday, Plaintiff's counsel advised Defendant's counsel in writing that approximately 100 documents—which appeared to be attorney-client privileged documents between Fowler White and Defendant—had been produced by Defendant within that large production, but that Plaintiff would "assume" that those 100 or so documents were correctly produced and were, in fact, not privileged.

Plaintiff did not specifically identify the approximate 100 documents by Bates numbers, and what followed was each side telling the other side that the other side was obligated to provide the specific Bates numbers for those approximate 100 documents. In this regard, there was a level of gamesmanship exhibited by counsel on both sides, combined with the rush of the holidays—

and the flu and illness of counsel on both sides—which affected the responses of both sides' counsel and exacerbated and prolonged this dispute.

This all led to an unfortunate disqualification dispute which has caused the Court to expend extensive judicial resources, including presiding over a two-day evidentiary hearing and oral argument. What the parties' counsel seem to miss in all of this is that if opposing counsel would have just picked up the phone or met in person, honestly spoken to one another, jointly and immediately identified and specified the approximate 100 documents at issue, and acted in good faith with one another like professional attorneys are supposed to do, they could have quickly resolved this matter among themselves with a simple claw-back of the privileged documents by Defendant under FRE 502(b) or other similar agreement.[2] That did not happen, and now this Court will proceed to explain and analyze this dispute in greater depth and announce in writing its ruling on Defendant's Motion to Disqualify Plaintiff's Counsel.[3]

### III. Issue One: Whether Defendant Met Its Burden of Establishing that the 10 Documents at Issue Were Attorney-Client Privileged Documents

The Court finds that the 10 documents at issue are, in fact, covered by the attorney-client

---

[2] The Court is frankly surprised that the sophisticated attorneys in this case did not enter into a written 502 claw-back agreement early on in this litigation, either separately or as part of an ESI Protocol Agreement. Jessica Wang, *Nonwaiver Agreements After Federal Rule of Evidence 502: A Glance at Quick-Peek and Clawback Agreements*, 56 UCLA L. Rev. 1835, 1844 (2009) (explaining that claw-back and quick-peek agreements "clearly produce substantial benefits, such as saving on costs of privilege review and preserving privilege."); *see also* Advisory Committee Notes to Fed. R. Evid. 502(d) (stating that such formal agreements are "becoming increasingly important in limiting the costs of privilege review and retention, especially in cases involving electronic discovery"). This Court encourages counsel in all cases involving e-discovery to consider the benefits of jointly entering into a 502(d) claw-back agreement and/or an ESI Protocol Agreement early on in the case.

[3] "A United States Magistrate Judge has the authority to enter an order denying sanctions (as opposed to a report and recommendations)." *Jeudine v. City of Homestead, Florida*, No. 14-23896-CIV, 2016 WL 913261, at *1 (S.D. Fla. Mar. 9, 2016) (citing *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 683 n. 2 (S.D. Fla. 2012)). "An order on the disqualification of counsel is a non-case dispositive matter that may be handled by a magistrate judge as a pretrial duty under 28 U.S.C. § 636(b)(1)(A)." *Id.* (citing *Estate of Jones v. Beverly Health & Rehab. Servs., Inc.*, 68 F. Supp. 2d 1304 (N.D. Fla. 1999)); *see also BioMatrix Specialty Pharmacy, LLC v. Horizon Healthcare Servs., Inc.*, No. 18-61680-CIV, 2018 WL 6812842, at *1 (S.D. Fla. Dec. 27, 2018).

privilege. One argument vigorously advanced by Plaintiff in its papers and at the hearing was that the original seven documents were never previously placed on a privilege log by Defendant, and therefore any claim of privilege was waived. However, the Court rejects this argument as the evidence established without any doubt that the seven Fowler White documents were previously placed on two privilege logs—albeit with different Bates numbers than they had when they were produced on December 20, 2018—which was due to a "tagging error."

The inadvertent disclosure of Defendant's three additional internal documents reciting legal advice or legal opinions from defense counsel in this federal case was uncovered so recently that Defendant has not yet had sufficient time to place them on a privilege log.

A second argument advanced by Plaintiff in their papers and at the hearing was that the documents could not be considered to be attorney-client privileged as they were created before[4] Defendant reasonably anticipated litigation. In other words, in this case involving 10 solely attorney-client privileged documents (and no claim by Defendant of work product as to the 10 documents at issue), Plaintiff argues that an insurance company simply cannot maintain attorney-client privilege over documents, if, at the time the attorney was retained or rendered a legal opinion or advice, the insurance company did not reasonably anticipate litigation. Plaintiff argues that this Court must read into an insurance company's (such as Defendant) claim of attorney-client privilege an absolute prerequisite that the insurance company must have reasonably anticipated litigation in order for the insurance company to be able to advance a claim of attorney-client privilege. Plaintiff argues that, since, in this case, Defendant's 30(b)(6) representative testified that Defendant did not reasonably anticipate litigation until the date this federal lawsuit was filed

---

[4] The prior version of this Order [DE 216] contained a scrivener's error in that it stated "after" instead of "before."

(November 7, 2017), then Defendant's claim of attorney-client privilege over the 10 documents must fail. The Court rejects Plaintiff's argument.

The Court acknowledges that there are a handful of Florida appellate cases and Southern District of Florida cases that have seemingly suggested or ruled that the attorney-client privilege only attaches in the insurance company context when the legal advice was obtained or rendered in anticipation of litigation. *See, e.g., Bankers Ins. Co. v. Fla. Dep't of Ins. & Treasurer*, 755 So. 2d 729, 729 (Fla. Dist. Ct. App. 2000); *1550 Brickell Assocs. v. QBE Ins. Co.*, 597 F. Supp. 2d 1334, 1336 (S.D. Fla. 2009); *Atriums of Palm Beach Condo. Assn., Inc. v. QBE Ins., Co.*, No. 08-80543-CIV, 2009 WL 10667478, at *3 (S.D. Fla. June 17, 2009); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 697 (S.D. Fla. 2007).

*Milinazzo* appears to be the first federal case in this circuit to rule in this manner. That case states in relevant part:

> In an insurance context, the attorney-client privilege only attaches when an attorney performs acts for an insurer in his processional [sic] capacity an [sic] in anticipation of litigation. *See, e.g., Bankers Ins. Co. v. Florida Dept. of Ins.*, 755 So.2d 729 (Fla. 1st DCA 2000) (finding no attorney-client privilege exists where attorney is merely 'a conduit' for the insurer).

*Milinazzo*, 247 F.R.D. at 697. Interestingly, *Bankers Ins. Co.*, the Florida state case relied upon by *Milinazzo* for this holding, does not so hold. A careful reading of the *Bankers Ins. Co.* case shows that it does not state that an insurance company must reasonably anticipate litigation in order to assert a claim of attorney-client privilege. To the extent *Milinazzo* may have relied upon *Bankers Ins. Co.* for that purported holding, and to the extent Plaintiff Ranger relies on *Bankers Ins. Co.* to urge such a holding from this Court, such reliance is rejected.

What the short, two-page *Bankers Ins. Co.* opinion states is as follows:

> However, we REVERSE the trial court's finding that an attorney-client

> privilege attaches to communications between the appellant and George K. Delano with respect to the investigation of the Department's employee. The evidence demonstrates that Delano serves as the appellant's secretary and general counsel, but the appellant presented only argument, and no evidence, **that he undertook the investigation of the Department's employee in his professional capacity as general counsel, or that he undertook the investigation in anticipation of litigation in which the appellant would be a party**....

*Id.* at 729–30 (Fla. Dist. Ct. App. 2000) (emphasis added). It appears that the "or" in the bold sentence above has been overlooked by some courts and by Plaintiff. Clearly, the "or" language in *Bankers Ins. Co.* means that a corporate insurance company can claim the attorney-client privilege if counsel was retained or tasked with providing an opinion in his or her professional capacity as an attorney <u>or</u> if counsel's investigation was undertaken in anticipation of litigation. Plaintiff's argument effectively changes the "or" to an "and" in *Bankers Ins. Co.*, something the Court rejects.

Moreover, it appears to this Court that the courts in the line of cases following *Milinazzo* and *Bankers Ins. Co.* may have somewhat misinterpreted the law or conflated a work-product analysis with an attorney-client privilege analysis in the insurance company context and overstated the significance of the anticipation of litigation issue in regard to an insurance company's claim of attorney-client privilege. In fact, a close reading of *Milinazzo* shows that it was primarily a work product case and only spent a few paragraphs discussing the ability of an insurance company to claim attorney-client privilege. *Id.* at 696-97. The Court notes that *Milinazzo* provides an excellent, well-reasoned framework to analyze the work-product privilege in an insurance company context, and this Court has previously relied upon *Milinazzo*'s excellent and well-reasoned work product analysis in deciding cases involving claims of work product by insurance companies. *See, e.g., Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-81397-CIV, 2015 WL 9257019, at *4 (S.D. Fla. Dec. 18, 2015); *Embroidme.com, Inc. v. Travelers Prop. Cas.*

7

*Co. of Am.*, No. 12-81250-CIV, 2013 WL 12094637, at *3 (S.D. Fla. Sept. 9, 2013). However, the Court simply cannot follow *Milinazzo* to the extent it requires that an insurance company anticipate litigation in order for the attorney-client privilege to attach.

To correctly analyze this issue, we must first go to the Florida Statute on attorney-client privilege. This is because state law provides the rule of decision in diversity actions, such as this one, where a party asserts the attorney-client privilege. *See, e.g., 1150 Brickell Assoc.*, 253 F.R.D. at 699; Fed. R. Evid. 501. Under the Florida Statutes, a "client" can be a corporation. Fla. Stat. § 90.502(1)(b). The statute defining attorney-client privilege also states that a "client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communication because they were made in the rendition of legal services to the client." Fla. Stat. § 90.502(2). The statute does not require that a corporation—such as an insurance company—establish that it anticipated litigation at the time it retained counsel or received legal advice in order to invoke the attorney-client privilege.

However, Florida and federal case law has somewhat altered the attorney-client privilege analysis for corporations and has held that claims of attorney-client privilege by corporations are subject to "heightened scrutiny." Courts have determined that the proper inquiry for a corporation is whether (a) "the communication would not have been made but for the contemplation of legal services," and (b) whether the "content of the communication relates to the legal services being rendered...." *Arlen House E. Condo. Ass'n, Inc. v. QBE Ins. (Europe) Ltd.*, No. 07-23199-CIV, 2008 WL 11333859, at *4 (S.D. Fla. Aug. 27, 2008) (citing *Southern Bell Telephone and Telegraph Co. v. Deason*, 632 So.2d 1377, 1383 (Fla. 1994)). Moreover, "[w]here a lawyer is engaged to advise a person as to business matters as opposed to legal matters, or when he is

employed to act simply as an agent to perform some non-legal activity for a client ... there is no privilege." *Cutrale Citrus Juices USA, Inc. v. Zurich American Ins. Group*, Case No. 5:03-cv-420-Oc-10GRJ, 2004 WL 525191, * 3 (M.D. Fla. Sept 10, 2004).

The Court agrees with this body of case law which requires "heightened scrutiny" when a corporation claims attorney-client privilege. But this heightened scrutiny does not mean that a corporation doing business as an insurance company must anticipate litigation in order to be able to claim or assert the attorney-client privilege. The Court believes that requiring an insurance company to anticipate litigation in order for it to assert an attorney-client provide would not only constitute a misreading of the applicable Fla. Stat. § 90.502 and case law, it would also partially, and improperly, eviscerate the attorney-client privilege for insurance companies who retain legal counsel for legal advice when litigation is not yet anticipated.

Moreover, it is clear that, in the insurance context, "no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer, [but] simply because [the attorney's] assigned duties were investigative in nature" does not preclude an assertion of the attorney-client privilege. *Arlen House E. Condo. Ass'n, Inc.*, 2008 WL 11333859, at *5; *Cutrale,* 2004 WL 525191, at *3. Therefore, "[t]he relevant question is not whether [the attorney] was retained to conduct an investigation, but rather, whether this investigation was related to the rendition of legal services. If it was ... the privilege is not waived." *Id.* The Court agrees with the *Arlen House* analysis.

While it makes sense that the attorney-client privilege can only be claimed by corporate insurers—and corporations in general—when their counsel is actually rendering legal services, and not working in another separate capacity such as a claims adjustor, it is wholly illogical that the attorney-client privilege would not apply in the insurance company context unless the

9

insurance company anticipates litigation at the time counsel is retained or the legal services are rendered. Attorneys often perform legal services and render legal advice for corporate insurers before the corporate insurer reasonably anticipates litigation. To say that such legal advice and legal opinions are not covered by the attorney-client privilege would be nonsensical and would unfairly remove attorney-client protection for corporate insurers in such circumstances.

It seems that some courts might have possibly conflated the attorney-client privilege and work product doctrine. In fact, several post-*Milinazzo* cases have seemingly abandoned the "anticipation of litigation" requirement with regard to the application of the attorney-client privilege for corporations. *See, e.g., In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5057844, at *6 (S.D. Fla. Oct. 18, 2012); *Moss v. GEICO Indem. Co.*, No. 5:10-CV-104-OC-10TBS, 2012 WL 1623923, at *3 (M.D. Fla. May 9, 2012) litigation; *Abby v. Paige*, No. 10-23589-CIV, 2011 WL 13223681, at *3 (S.D. Fla. Nov. 30, 2011). The Court agrees and finds that a corporation doing business as an insurance company should not be estopped from claiming an attorney-client privilege merely because that insurance company did not reasonably anticipate litigation at the time counsel was retained or at the time the legal services were rendered. To rule otherwise would be an absurdity.

The real test for whether the attorney-client privilege attaches in the context of corporate insurers is whether the attorney functioned as a mere conduit, claims adjustor or claim investigator, or rather, whether the attorney functioned in the attorney's professional capacity in dispensing legal advice. *Bankers Ins. Co.*, 755 So. 2d at 729. Clearly, the privilege should not attach when the attorney is working for the corporate insurer solely as a conduit, claims adjustor or a mere claim investigator rather than as an attorney rendering legal advice or legal services. But the attorney-client privilege should attach when the lawyer is rendering legal advice or legal services

10

to a corporate insurer even if no litigation is reasonably anticipated by the insurer at the time counsel is retained or at the time the legal advice or legal service are rendered. Plaintiff's argument that Defendant simply cannot claim attorney-client privilege as to seven of the 10 documents at issue because Defendant did not anticipate litigation at the time Fowler White was retained or at the time Fowler White provided legal advice or legal services to Defendant is flatly rejected. Perhaps in certain factual circumstances the date that the corporate insurer reasonably anticipated litigation might be considered as one potentially relevant factor in an analysis of an insurance company's claim of attorney-client privilege; however, such a factor should not be determinative nor deemed to be a prerequisite to a corporate insurer's ability to claim the attorney-client privilege. In this case, Fowler White was not in-house counsel, but rather was outside coverage counsel for Defendant. Fowler White was not acting as a conduit, claims investigator, or claims handler. Fowler White was providing legal advice and legal services to Defendant in its capacity as outside coverage counsel, and it matters not whether Defendant anticipated litigation at the time Fowler White was retained or at the time Fowler White rendered its legal advice or legal services.

In the instant case, the Court has carefully reviewed the 10 documents at issue *in camera* and finds that they are protected by the attorney-client privilege. Fowler White was clearly retained by Defendant in the contemplation of legal services. Moreover, the content of the documents sufficiently establishes that Fowler White was rendering legal services and was acting in the capacity of legal counsel and not as a claim investigator, claims adjustor, monitor, or mere conduit. Defendant's claim of attorney-client privilege over seven of the 10 documents is proper and is legally and factually justified.

The other three documents were internal documents of Defendant which recited legal

11

advice or opinions rendered by Defendant's current legal counsel in this federal case. Those three documents are clearly protected by the attorney-client privilege.

IV. **Issue Two: Whether Defendant Met Its Burden of Establishing that It Did Not Waive Its Claim of Attorney-Client Privilege as to the 10 Documents**

Upon careful review of all the evidence and testimony submitted on this issue, and upon listening to the testimony and observing the demeanor of Richard Weldy, Esq., the Court finds that Defendant has met its burden of establishing that it did not waive the attorney-client privilege as to the 10 documents. First, Defendant did not waive the privilege by failing to include the original seven Fowler White documents on a privilege log as Defendant did, in fact, include the documents on two previous privilege logs—albeit with different Bates numbers than they had when produced on December 20, 2018, which was due to a "tagging error." Additionally, due to the timing of their production, Defendant did not yet have an opportunity to place any of the other three documents internal to Defendant on a privilege log, but they will do so promptly.

Second, the Court finds that Defendant has established that its counsel acted in compliance with Federal Rule of Evidence 502(b)[5] and Federal Rule of Civil Procedure 26(b)(5)(B)[6].

---

[5] **(b) Inadvertent Disclosure.** When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
(1) the disclosure is inadvertent;
(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
(3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).
Fed. R. Evid. 502.

[6] *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present

12

Approximately 14,500 documents were produced by Defendant Allied on December 20, 2018, and only 10 documents of that large batch of documents were produced in error. We all make mistakes, and Defendant's counsel made one here by inadvertently producing those 10 documents. It is important to note, however, the context within which this mistaken, inadvertent production was made by Defendant's counsel.

Defendant made its production of documents on December 20, 2018—right before the Christmas holiday. Plaintiff's counsel sent Defendant's counsel lengthy correspondence at 4:00 p.m. on Friday, December 28, 2018, right before the New Year's holiday, stating in part, and at the very end of the letter, that Defendant had produced some correspondence involving Fowler White which may have been subject to attorney-client privilege. Defendant's counsel's office was closed for the holidays until January 2, 2019, which was clearly reasonable. The December 28, 2018 correspondence, from Andrea DeField, Esq., at Plaintiff's law firm did not specify the Bates numbers of the seven documents contained within the approximate 100 pages of Fowler White documents, but the Court notes that she was ill with the flu over the holidays and ultimately hospitalized, which certainly accounts for any alleged deficiency in the letter.

Plaintiff's counsel, David Costello, Esq., called Defendant's counsel, Richard Weldy, Esq., in the morning on January 2, 2019, and they ultimately participated in a telephone conference that afternoon regarding discovery. Mr. Weldy and Mr. Costello specifically discussed the Fowler White documents at issue, and Mr. Weldy told Mr. Costello that any Fowler White documents containing legal advice or opinions which had been inadvertently disclosed to Plaintiff by

---

the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.
Fed. R. Civ. P. 26(b)(5)(B).

13

Defendant should be segregated, returned to Defendant and destroyed by Plaintiff. Mr. Costello requested the Bates numbers of the documents at issue from Mr. Weldy, and Mr. Weldy wanted those same Bates numbers from Mr. Costello, but neither counsel apparently knew them for certain at that time. Mr. Weldy promised to put his request in writing, but he failed to do so until January 7, 2019, after the deposition of Defendant's 30(b)(6) representative where the issue came to a head. Mr. Weldy, it should be noted, suffered from the flu from January 4 to January 8, 2019, which was certainly part of the cause of the delay and any deficiencies in his response.

Under the facts of this case, Defendant's counsel's disclosure of the 10 attorney-client privileged documents was clearly inadvertent. The holder of the privilege, Defendant and its counsel, took reasonable steps to prevent disclosure. Defendant's counsel utilized the services of a junior associate, senior associate, and an e-discovery vendor to sift through the voluminous documents responsive to Plaintiff's discovery requests, and just a few documents were improperly mis-tagged by mistake. Additionally, Defendant's counsel took reasonable steps to rectify the error as established above. Rule 26(b)(5)(B) does not require that the holder of the privilege immediately provide Bates numbers for the privileged documents, although that would surely be the best practice if the Bates numbers were known at the time. Mr. Weldy did promptly notify Mr. Costello of Defendant's claim of attorney-client privilege as to the Fowler White attorney-client privileged documents and demanded return of the documents. That was clearly sufficient under the applicable rules.

The documents were inadvertently produced, and no waiver of the attorney-client privilege occurred.[7]

---

[7] As to the one document Bates stamped AWNAC02050, Defendant has agreed to redact the document as discussed in open court and provide a redacted version of the document to Plaintiff. That shall be done forthwith.

V. **Issue Three: Whether Defendant Met Its Burden of Establishing that Plaintiff's Counsel Failed to Comply with Rule 26(b)(5)(B) and Florida Bar Rule 4-4.4**

Upon careful review of all of the evidence submitted as to this issue and upon listening to the testimony and observing the demeanor of Walter Andrews, Esq., the Court finds that Defendant did not meet its burden of establishing that Plaintiff's counsel failed to comply with Rule 26(b)(5)(B) and Rule 4-4.4 of the Rules Regulating the Florida Bar[8] upon learning of Plaintiff's receipt of privileged documents. In other words, the evidence establishes that Plaintiff's counsel met its basic obligations under the rules—although Plaintiff's counsel's conduct was not perfect.

Plaintiff's counsel's December 28, 2018 correspondence did raise the issue of Defendant's production of documents involving Fowler White, even though the correspondence did not specify the Bates numbers for the documents in question and stated that Plaintiff's counsel would "assume" a waiver of any claim by Defendant of attorney-client privilege. The Court rejects any such "assumption" of waiver by a receiving counsel of potentially privileged documents as the applicable rules do not permit an attorney to "assume" waiver. However, the timing of the production around the holidays, the rushed review that followed over the holidays, the fact that Andrea DeField, Esq., was hospitalized with an illness, and the fact that Walter Andrews, Esq., was scheduled to attend his own daughter's wedding and related family events, all affected and mitigated Plaintiff's counsel's imperfect conduct in this case.

Moreover, the evidence shows that, once Plaintiff's counsel received the Bates numbers for the documents which Defendant's counsel claimed were attorney-client privileged, Plaintiff's

---

[8] A lawyer who receives a document or electronically stored information relating to the representation of the lawyer's client and knows or reasonably should know that the document or electronically stored information was inadvertently sent must promptly notify the sender. Fla. Bar Rule 4-4.4(b).

counsel did reasonably promptly segregate, return and destroy the documents. Additionally, only three of the 10 documents were attempted to be used in any manner by Plaintiff's counsel, and only at a deposition where Plaintiff's counsel testified that he was merely trying to establish the basis for Defendant's claim of attorney-client privilege. Finally, any potentially prejudicial substantive answers to the limited questions by Plaintiff's counsel at that deposition were not provided by Defendant's 30(b)(6) witness, but rather were objected to by Defendant's counsel who instructed the witness not to answer the questions.

### VI. Issue Four: Whether Defendant Met Its Burden of Establishing that There Is a Possibility that Plaintiff's Counsel Has Received an Unfair Informational Advantage

Upon consideration of all the relevant evidence, testimony and arguments, the Court finds that Defendant has not met its burden of establishing that there is a possibility that Plaintiff's counsel has received an unfair informational advantage. The attorney-client privileged documents have not been used in an amended complaint or other pleading. The only real attempted use of three of the 10 documents was at a deposition as discussed above, and there is no possibility of prejudice based upon those questions, which were, for the most past, objected to and not answered. Additionally, lawyers' opinions as to punitive damages and supersedeas bonds are not relevant as the Court is responsible for interpreting a contract. Interpretation of an insurance contract is a legal issue to be made by the Court by looking at the contract language. This further militates against the possibility of any prejudice whatsoever to Defendant.[9]

### VII. Disqualification is Not Proper or Appropriate

---

[9] In its response to the Motion to Disqualify [DE 190, p. 8], Plaintiff attempts to make the argument that Defendant and its counsel violated Rule 11 in filing the motion to disqualify Plaintiff's counsel. However, the Court rejects this argument. After carefully reviewing all of the evidence and testimony in relation to the motion to disqualify, it is clear to the Court that Defendant and its counsel did not file the motion to disqualify for an improper purpose, nor did they advance arguments which were frivolous or had no evidentiary support.

In sum, Plaintiff's counsel should not be disqualified. In addition to the analysis above, the Court denies the Motion for the following reasons. First, disqualification is an extreme sanction which is not justified in this case. Second, this complex and fact-intensive case has been pending for some time and has reached the final stages of discovery. Requiring Plaintiff to retain new counsel and get them up to speed this late in the litigation would be unduly expensive and burdensome. Disqualification of Plaintiff's counsel would severely prejudice Plaintiff and is wholly unnecessary under the facts of this case. Third, Defendant created this problem in the first place by inadvertently producing privileged documents. Both sides share the blame for what occurred in this case and this militates against disqualification. Fourth, many Fowler White documents not subject to a claim of attorney-client privilege were produced by Defendant in April 2018 and December 2018; thus, it was difficult, if not impossible, for Plaintiff's counsel to quickly determine which documents were inadvertently disclosed and subject to the attorney-client privilege and which were not. Fifth, Plaintiff's counsel notified Defendant's counsel of a possible attorney-client privilege problem immediately. Sixth, Plaintiff's counsel was madly scrambling to review 14,500 documents over the holidays and was given no initial guidance from Defendant's counsel about which documents were allegedly privileged. Seventh, Plaintiff's counsel cannot recall what the privileged documents even discussed. Eighth, the Court can cure the problem with less drastic means by imposing prophylactic measures, as summarized below.

Based on the foregoing, and as stated in open court on January 29, 2019, it is hereby **ORDERED** as follows:

1. Defendant's Motion to Disqualify Plaintiff's Counsel [DE 185] is **DENIED**.

17

2. Plaintiff is not permitted to utilize any of the 10 attorney-client privileged documents at issue, or any of the specific information directly and exclusively obtained from the 10 documents, in this case or in any other case involving Defendant. Plaintiff's counsel and Plaintiff shall ensure that they have destroyed all copies of the 10 documents and shall reaffirm and certify to the Court and opposing counsel that they have done so within seven (7) days of the date of this Order. If in the future Plaintiff's counsel or Plaintiff do utilize any of the 10 documents or the specific information directly and exclusively obtained from those specific documents, the Court is willing to revisit the disqualification issue.[10] The Court, however, strongly expects such action not to be necessary.

3. The temporary stay that was ordered by the Court on January 15, 2019 [DEs 192, 193] is lifted. The parties are ordered to expeditiously and cooperatively complete discovery in this case.

4. In light of this dispute and the discovery delays occasioned by this dispute, the January 31, 2019 cut-off date for discovery and dispositive motions is obviously untenable. As announced in open Court on January 29, 2019, the discovery cut-off and dispositive motion deadline are both hereby extended to **March 4, 2019**, without prejudice to the parties' ability to request further extensions, if necessary and justified, for consideration by the Court.

---

[10] Of course, as discussed previously in this Order, once redacted and produced by Defendant, the document labeled AWNAC02050 can be used by Plaintiff.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of February, 2019.

                                                    WILLIAM MATTHEWMAN
                                                  United States Magistrate Judge