UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-81226-CIV-MARRA/MATTHEWMAN

RANGER CONSTRUCTION INDUSTRIES, INC.,

Plaintiff,

vs.

ALLIED WORLD NATIONAL ASSURANCE
COMPANY,

Defendant.

_____/

**OMNIBUS ORDER**

This cause is before the Court before Plaintiff's Motion for Summary Judgment on Count

II for Declaratory Relief (DE 73 and 81);[1] Plaintiff's Motion to Strike (DE 173); Defendant's

Motion for Summary Judgment on the Declaratory Judgment claim (DE 241);[2] and

Plaintiff's Motion for Leave to File a Surreply (DE 259).  The Court held an oral argument on

June 11, 2019 (DE 266).  The Court has carefully considered the Motions and is otherwise fully

advised in the premises.

I. Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to

interrogatories and reasonably inferred therefrom, for the purpose of these motions, are as

follows:

In February of 2014, Plaintiff Ranger Construction Industries, Inc. ("Plaintiff" "Ranger")

_____

[1] Docket entry 81 is the sealed version of Plaintiff's summary judgment motion.

[2] The Court previously reserved on the declaratory judgment claim (DE 267).

was hired by the Florida Department of Transportation to build and design a portion of an express lane on I-75 in Miramar, Florida (the "Project"). (Def. Resp. in Opp. to Pl. Statement of Material Facts ("DE 91") at ¶ 1.)  Plaintiff entered into a subcontracting agreement with Allied Trucking, a commercial trucking carrier, in connection with the Project. (DE 91 at ¶ 2.)  Allied Trucking then entered into a subcontracting agreement with Double B, a commercial trucking company, in connection with the Project. (DE 91 at ¶ 3.)  Double B retained Juan Calero as a driver for one of its tractor trailers used at the Project. (DE 91 at ¶ 4.)

On May 28, 2015, Juan Calero attempted a U-Turn across all four lanes of southbound traffic at a low speed. Jonathan Astaphan's vehicle collided with the tractor trailer driven by Juan Calero.  Jonathan Astaphan was killed and his passenger, Patrissia Rolle, was seriously injured. Liza Angulo's vehicle also collided with the tractor trailor, killing her.  (DE 91 at ¶ 5.)

At the time of the accident, Plaintiff was insured under an excess liability insurance policy issued by Defendant Allied World National Assurance Company ("Defendant" "Allied"), bearing policy number 0305-4178.  The policy provided liability coverage in the amount of $25,000,000.00 per occurrence (Policy, Ex. A, DE 91-1), and it had an effective period of April 1, 2015 through April 1, 2016. (Policy, DE 12-6.)  The Policy provides that any organization qualifying as an insured under the underlying excess insurance policies and underlying primary policy qualifies as an insured under the Policy. (Section III(B), Policy.)  Plaintiff is listed as a named insured.  (Endorsement CG T8 00, DE 12-4.)

On July 22, 2015, Jennifer Astaphan, as personal representative of the Estate of Jonathan Astaphan, filed suit against multiple entities, including Plaintiff, Defendant, Calero, Allied

Trucking and Double B.[3]   (Astaphan Compl., DE 12-2.)  Calero, the driver, was charged with reckless driving and two counts of vehicular homicide in connection with the accident.  (DE 91 at ¶ 7.)

At the time of the accident, Plaintiff had multiple layers of insurance, including liability for bodily injury suits.  Plaintiff had a primary liability policy and multiple excess insurance policies that provided coverage when the liability limits of the primary policy or any preceding layer was exhausted.  (Compl. ¶ 15, DE 1.)

The underlying state court complaint alleged that Plaintiff failed to comply with the terms of the Florida Department of Transportation contract and negligently selected its subcontractors.  (Astaphan Compl. at ¶ 45.)  Astaphan also alleged that Plaintiff's construction operations were inherently dangerous and ultra hazardous, and therefore Plaintiff could not delegate its legal duty to a subcontractor. (Id. at ¶¶ 151, 157-58.)  Astaphan alleged that Plaintiff was vicariously liable for the subcontractor's actions, including Calero's actions because "Calero was an employee, agent, apparent agent, and/or servant" of Plaintiff and was acting in the course and scope of his employment, agency and/or servant/relationship with Plaintiff. (Id. at ¶ 192.)

On June 13, 2016, Astaphan moved for leave to amend its state court complaint to add punitive damages against Calero and Plaintiff.  With respect to Plaintiff, Astaphan sought leave under Florida Statute §§ 768.72(3)(a) and (3)(b).  (Motion, DE 74-9.)  The state court granted the motion as to Calero under section 768.72(2)(b) and as to Plaintiff under section 768.72(3)(a) and (c). (Order, DE 74-10.)  Soon thereafter, Astaphan filed an amended complaint adding a count alleging Plaintiff violated a non-delegable duty and two counts alleging Plaintiff was vicariously

---

[3] The Estate of Liza Angulo also filed suit, but settled prior to a verdict being rendered.

liable for the negligence of several entities, including Calero (Astaphan amended compl., DE 1-4.)

Trial of the Astaphan suit began October 3, 2017.[4] (DE 91 at ¶ 29.)  The jury was instructed that it could not find punitive damages against Plaintiff unless it found that Calero was personally guilty of gross negligence and Calero was an agent of Plaintiff.  The jury instructions stated that the jury could award punitive damages against Ranger if it found from clear and convincing evidence that Ranger "actively and knowingly participated in such conduct of [Calero]" or "engaged in conduct that constituted gross negligence and that contributed to the death of [Astaphan]." The jury instructions also stated that Ms. Astaphan "claims that punitive damages should be awarded against [Calero] for his gross negligence and against [Ranger] for its active and knowing participation in [Calero's] gross negligence or its gross negligence or both." (Astaphan jury instructions, DE 74-12.)

 The jury answered "yes" to the following questions: (1) "was there negligence on the part of [Ranger] that was a legal cause of death of Jonathan R. Astaphan;" (2) "[a]t the time of the incident, did [Ranger] violate its contract with the Florida Department of Transportation or fail to perform, update or comply with the maintenance of the traffic safety plan as required by the contract in a manner which was a legal cause of the death of Jonathan Astaphan;" (3) "[a]t the time of the incident, was [Calero] working as an agent of [Ranger] in the course and scope of his agency therewith;" (4) "[u]nder the circumstances of this case, state whether you find by clear and convincing evidence that punitive damages are warranted against [Calero]" and (5) "under

_____

[4] The primary, first and second excess level of coverage were exhausted prior to the Astaphan trial.  (Compl. ¶¶10-11.)

4

the circumstances of this case, state whether you find by clear and convincing evidence that punitive damages are warranted against [Ranger]." (Verdict Form, DE 74-3.)

The suit resulted in a $45 million verdict against Plaintiff, including a $25 million punitive damages award.  (Verdict Form and Final Judgment, DE 74-3, 74-4.)

Plaintiff moves for summary judgment, arguing that: (1) there is coverage under the insurance policy for the punitive damages award because the policy does not exclude punitive damages; (2) insurance coverage for an award of punitive damages based on vicarious liability does not violate public policy; (3) Astaphan only sought punitive damages for Plaintiff's vicarious liability and (4) the jury was instructed accordingly relative to an award of punitive damages against Plaintiff.

Defendant moves for the summary judgment and makes the following arguments: (1) the punitive damages assessed by the jury against Plaintiff are not permitted under Florida law; (2) Florida law only permits direct punitive damages, not vicarious and (3) the jury found Plaintiff liable for direct punitive damages.

## II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant  is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

The Court begins its discussion by noting that the insurance policy at issue does not exclude coverage for punitive damages.  Next, the Court concludes that the jury awarded punitive damages against Plaintiff based upon vicarious liability.  The Court rejects Defendant's assertion that the 1999

Amendment to Florida Statute § 768.72 eliminated vicarious liability as a basis for an award of punitive damages in Florida. See Staff Analysis, HB 775 (Fla.) p. 17 (June 2, 1999) ("Subsection (3) revises the common law threshold for holding an employer or other principal vicariously liable for punitive damages") (emphasis added).[5]  Having arrived at these conclusions, the issue before the Court is whether, after the passage of the 1999 Amendment to Florida Statute § 768.72, the public policy of Florida prohibits liability insurance coverage for an award of punitive damages based upon vicarious liability.  In order to answer this question, a review of the history of the common law of Florida relative to awarding punitive damages, and the history of law relative to insuring awards of punitive damages, is required.

      A.    Common Law Punitive Damages in Florida

"The purpose of punitive damages is, as the name indicates, to punish one whose wrongdoing surpasses mere mistake, negligence or thoughtlessness and to deter others from similar misconduct." U.S. Concrete Pipe Co. v. Bould, 437 So. 2d 1061, 1066 (Fla. 1983) (Ehrich, J., concurring); Mercury Motors Express, Inc. v. Smith, 393 So. 2d 545, 549 (Fla. 1981). At common law, the standard for imposing punitive damages on the tortfeasor was willful and wonton conduct of "the character of negligence necessary to sustain a conviction for manslaughter." Carraway v. Revell, 116 So. 2d 16, 20 (Fla. 1959); Como Oil Company, Inc. v. O'Loughlin, 466 So. 2d 1061, 1062 (Fla. 1985); White Construction Co. V. Dupont, 455 So. 2d 1026, 1028 (Fla. 1984).  Conduct amounting to gross negligence was insufficient. Bould, 437 So.

---

[5] At oral argument, Defendant abandoned its argument that the jury awarded direct punitive damages against Ranger.  Instead, Defendant argued that it does not matter whether the conduct was vicarious or direct because the conduct at issue is not insurable. In any event, Defendant did not meet its burden to show that the jury awarded direct punitive damages against Ranger.

2d at 1064; Carraway, 116 So. 2d at 20; Como Oil Company, Inc., 466 So. 2d at 1062; White,455 So.2d at 1028.

Since corporations and other business entities can only act through their agents, see Schropp v. Crown Eurocars, Inc., 654 So.2d 1158, 1161 (Fla. 1995), one of the developments in the common law related to when such entities could be held liable for punitive damages. Two theories of liability developed, direct corporate liability and vicarious liability. Direct corporate liability for punitive damages exists "where the agent primarily causing the imposition of punitive damages was the managing agent or primary owner of the corporation." Winn-Dixie Stores, Inc. v. Robinson, 472 So .2d 722, 724 (Fla. 1985); Bankers Multiple Line Insurance Co. v. Farish, 464 So. 2d 530, 533 (Fla. 1985). Of course, in a direct liability case, the level of wrongdoing that must be established on the part of the managing agent or primary owner is the same as that necessary to award punitive damages against an individual tortfeasor. See Winn-Dixie, 472 So. 2d at 724 ("the *corporate defendant* acted with 'malice, moral turpitude, wantonness, willfulness or reckless indifference to the rights of others'") (emphasis in original).

On the other hand, at common law, in order for a corporate entity to be held liable for punitive damages based on vicarious liability, the misconduct of the employee must have risen to the level of willful and wanton, and there must be "some fault on the part of the employer which foreseeably contributed to the plaintiff's injury." Mercury Motors, 393 So. 2d at 549.[6] The

---

[6] Prior to Mercury Motors, an award of punitive damages based on vicarious liability only required willful and wanton conduct on the part of the employee committed in the course of employment. No separate acts of the employer were at issue. See Bould, 437 So. 2d at 1066 (Ehrlich, J., concurring).

"some fault" standard was later described by the Florida Supreme Court as "ordinary

negligence."  Schropp, 654 So. 2d at 1160.  The additional element of some fault on the part of

the employer "did not itself create a direct liability for punitive damages." 437 So. 2d at 1066

(Ehrlich, J., concurring).

      B.      Insurance Coverage For Punitive Damages In Florida

      Separate and apart from the development of the common law relative to punitive damages

in Florida, the issue arose as to whether insurance policies could cover losses stemming from

judgments awarding punitive damages.  Surprisingly, that question was not first addressed by a

Florida state court, but rather by a federal court.  In Northwestern National Casualty Co. v.

McNulty, 307 F.2d 432 (5th Cir. 1962), the court held that if an insurance policy provided for

coverage of punitive damages, "it would contravene public policy." Id. at 434.   The court

reasoned that:

> The policy considerations in a state where, as in Florida and Virginia,
> punitive damages are awarded for punishment and deterrence, would seem
> to require that the damages rest ultimately as well nominally on the party
> actually responsible for the wrong. If that person were permitted to shift
> the burden to an insurance company, punitive damages would serve no
> useful purpose. Such damages do not compensate the plaintiff for his
> injury, since compensatory damages already have made the plaintiff
> whole. And there is no point in punishing the insurance company; it has
> done no wrong. In actual fact, of course, and considering the extent to
> which the public is insured, the burden would ultimately come to rest not
> on the insurance companies but on the public, since the added liability to
> the insurance companies would be passed along to the premium payers.
> Society would then be punishing itself for the wrong committed by the
> insured.

Id. at 440-41.

      The holding of Northwestern National Casualty Co. was first adopted by a Florida state

court in Nicholson v. Am. Fire & Cas. Ins. Co., 177 So. 2d 52, 53 (Fla. Dist. Ct. App. 1965), and

has been followed ever since by the state courts of Florida, including the Florida Supreme Court. U.S. Concrete Pipe Co., 437 So. 2d at 1064 ("Florida public policy prohibits liability insurance coverage for punitive damages assessed against a person because of his own wrongful conduct . . . The Florida policy of allowing punitive damages to punish and deter those guilty of aggravated misconduct would be frustrated if such damages were covered by liability insurance."); Herendeen v. Mandelbaum, 232 So. 2d 487, 492 (Fla. Dist. Ct. App. 2017); TRG Desert Inn Venture, Ltd. V. Berezovsky, 194 So. 3d 516, 520 n.5 (Fla. Dist. Ct. App. 2016).

Having established the general rule that Florida public policy precluded liability insurance coverage for awards of punitive damages, the question arose as to whether that public policy applied to defendants who were vicariously liable for punitive damages.   Soon after the Northwestern National Casualty and Nicholson decisions, Florida appellate courts addressed this question and ruled that the public policy of the state was not violated by insuring liability for awards of punitive damages when the judgment was based on vicarious liability.  Travelers Insurance Company v. Wilson, 261 So. 2d 545 (Fla. Dist. Ct. Appeal. 1972); Sterling Insurance Co. V. Hughes, 187 So. 2d 898 (Fla. Dist. Ct. App.), cert. den., 194 So. 2d 622 (Fla. 1966).  The rationale for these decisions was that where the punitive damage award is based on vicarious liability stemming from the wrongful acts of an employee, and where there no active wrongdoing or misconduct on the part of the employer, the policy is not violated.  The holdings of these courts was adopted by the Florida Supreme Court in Bould, 437 So.2d at 1061.  As a corollary to this proposition, "if the insured employer's fault in the underlying cause rose to the level of gross negligence or willful or wanton misconduct" there would be no coverage. Highlands Insurance Company v. McCutchen, 486 So. 2d 4, 5 (Fla. Dist. Ct. App. 1986).

10

C. The 1999 Amendment to Florida Statute § 768.72

In 1999, the Florida Legislature amended Florida Statute § 768.72 and changed the

common law standard of culpability required to hold a defendant liable for punitive damages.

Two of the amendments have a direct impact on the ultimate issue presented in this case.

For purposes of this case, the relevant portions of the statute follow:

(2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:

(a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

(3) In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:

(a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;

(b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or

(c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

11

Florida Statute § 768.72.

This statute changed the standard of liability developed under the common law to hold a defendant liable for punitive damages. With respect to the active tortfeasor, the plaintiff must prove that the person was personally guilty of intentional misconduct or "gross negligence." Florida Statute § 768.72(2)(a) or (b).  This lowered the common law standard for imposing liability on a defendant, since "gross negligence" previously was not sufficient. Bould, 437 So. 2d at 1064; Carraway, 116 So. 2d at 20; Como Oil Company, Inc., 466 So. 2d at 1062; White, 455 So. 2d at 1028.

On the other hand, with respect to imposing liability for punitive damages against an employer or principal, the standard of proof was raised.  Whereas previously all that was required to impose vicarious liability for punitive damages on an employer or principal was to show "some fault" or "ordinary negligence" on their part,[7] now the plaintiff must show, at a minimum, that the employer or principal engaged in "gross negligence," meaning the employer or principal's conduct "was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights or persons exposed to such conduct." Florida Statute § 768.72(2)(b) and (3)(c).  See HCA Health Servs. of Fla., Inc. v. Byers-McPheeters, 201 So. 3d 669, 670 (Fla. Dist. Ct. App. 2016) ("Under section 768.72(3), the legislature established a heightened standard for imposing punitive damages on an employer rather than adopting the common law rules of agency and vicarious liability).[8]

---

[7] Mercury Motors, 393 So. 2d at 549; Schropp, 654 So. 2d at 1160.

[8] Plaintiff cites to the following post-1999 cases stating that Florida courts still apply the "some fault" standard set forth in Mercury Motors for vicarious liability (DE 81 at 16; DE 93 at

As discussed previously, the Florida policy of allowing punitive damages to punish and deter those guilty of aggravated misconduct would be frustrated if such damages were covered by liability insurance. The rationale for permitting insurance coverage for awards of punitive damage based on vicarious liability was that the conduct justifying the award was that of an employee, and there no active wrongdoing or misconduct on the part of the employer. When that case law developed, a plaintiff only had to demonstrate "some fault" or "ordinary negligence" on the part of the employer or principal. Now, with the 1999 amendment to Florida Statute § 768.72, before punitive damages based on vicarious liability can be imposed on an employer or principal, the employer or principal must engage, at a minimum, in conduct "so reckless or

---

11): Travelers Indem. Co. v. Despain, No. 5:05CV489 OC10GRJ, 2006 WL 3747318, at *3 (M.D. Fla. Dec. 18, 2006) ("Florida public policy does not preclude insurance coverage of punitive damages when the insured himself is not personally at fault, but is merely vicariously liable for another's wrong." Bould, 437 So. 2d at 1064); Brevard Achievement Ctr., Inc. v. Camp, 254 So. 3d 1135, 1137 n.2 (Fla. Dist. Ct. App. 2018) ("As the plaintiff below seeks to obtain punitive damages from a corporate defendant, the standard established in Schropp v. Crown Eurocars, Inc., 654 So. 2d 1158, 1161 (Fla. 1995), must also be established by a proffer of admissible evidence.") and 2P Commercial Agency S.R.O. v. SRT USA, Inc., No. 2:11-CV-652-FTM-29, 2013 WL 3974668, at *6 (M.D. Fla. July 31, 2013) ("In order to recover for punitive damages under the doctrine of respondeat superior, there must be "some fault" on the employer's part. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla.1981).").

The Court rejects Plaintiff's assertion that these cases demonstrate that the "some fault" standard still applies. The statement by the court in Travelers Indem. Co. was dicta. The issue in that case was whether the insurance policy in question covered an award of punitive damages, and the court held it did not. The issue presented in this case, whether the public policy of Florida prohibits insurance liability coverage for punitive damages after the passage of the 1999 amendment to Florida Statute § 768.72, was never addressed. The court's reference in Brevard Achievement Ctr., Inc. to the standard established in Schropp does not assist Plaintiff because Schropp was a "direct liability" case, not a vicarious liability case. Lastly, the court's statement in 2P Commercial Agency S.R.O. was also dicta, since the case never involved insurance and did not address the question of whether the public policy of Florida prohibits liability insurance coverage for punitive damages after the passage of the 1999 amendment to Florida Statute § 768.72.

wanting in care that it constituted a conscious disregard or indifference to the life, safety, or

rights or persons exposed to such conduct." Florida Statute § 768.72(3)(c).  Thus, under current

Florida law, the burden of proof required to impose vicarious liability for punitive damages on an

employer or principal is sufficient wrongdoing to impose punitive damages on the active

tortfeasor.  That being the case, it would frustrate and be inconsistent with the public policy of

Florida to permit liability insurance coverage for the actions of an employer or principal that is so

reckless or wanting in care that it constitutes a conscious disregard or indifference to life.  Under

these circumstances, where the minimal requirement for imposing vicarious liability for punitive

damages is gross negligence as defined by the statute, it can no longer be said that the employer

or principal did not participate in the wrongful conduct justifying the award.   It is now necessary

to show that the employer or principal is complicit in the wrong.  To permit insurance coverage

for such liability would not deter the employer or principal from engaging in such conduct, it

would foster "freedom of misconduct inconsistent with the establishment of sanctions against

such misconduct." Northwestern National Casualty Co., 307 F.2d at 440; see Highlands, 486 So.

2d at 5 (where the employer's fault rises to the level of gross negligence, there is no coverage).

    This conclusion is supported by the case of Service Corporation International v.

Continental Casualty Company, No. 04-CIV-61156, 2006 WL 8446047 (S.D. Fla. Nov. 22,

2006), aff'd, 265 F. App'x 892 (11th Cir. 2008).  In that case, the court addressed the effect of the

1999 amendment to Florida Statute § 768.72 on insurance coverage for punitive damages

assessed against an employer.  The employer admitted that it was vicariously liable, which the

court concluded meant that its conduct was also grossly negligent. Id. at * 16 and n.23.  The court

stated:

> While there has been no case law post-enactment which specifically addresses the effect of § 768.72(3) on the vicarious liability exception to the rule prohibiting coverage for punitive damages, the relevant case law preceding the statute uniformly holds that the employer or other legal entity's active and knowing participation, ratification or consent, or gross negligence renders the vicarious liability exception unavailable.   Thus, at a bare minimum under applicable statute and case law, a principal has to be grossly negligent, not merely negligent, to be vicariously liable for punitive damages under Florida law.

Id. at * 16. (internal citations omitted).  In so ruling, the court held that Florida Statute § 768.72 prohibited a principal from being vicariously liable for punitive damages unless that principal's conduct was at least grossly negligent, and that the admission of vicarious liability in that case meant that the principal engaged in gross negligence which was not insurable in Florida. Id.  at * 15-16.

Plaintiff contends that this case is inapposite for three reasons.[9]  First, Plaintiff argues that the insured in Serv. Corp. admitted that the insured was grossly negligent under Florida Statute § 768.72(3)(c), whereas here it is unclear whether the jury awarded punitive damages under section 3(a) or 3(c) of Florida Statute § 768.72.  Regardless of which prong the jury used in this case to base its decision, at a bare minimum, it had to be based on gross negligence.  Providing insurance coverage for misconduct rising to that level is violative of Florida's public policy.

Second, Plaintiff argues that the Eleventh Circuit's affirmance did not expressly hold that the district court was correct that Florida Statute § 768.72 "upended longstanding Florida law holding that vicarious punitive damages are insurable." (DE 259-2 at 6.)  Plaintiff states that the Eleventh Circuit did not address vicarious liability and "likely affirmed" on the "direct liability

---

[9] Plaintiff also objects to this case because Defendant raised it in its reply, not in its initial motion brief. Plaintiff seeks to file a surreply, which the Court will permit.

ground." (Id. at 7.)  With respect to the Eleventh Circuit's affirmance, the Eleventh Circuit simply stated "[w]e also conclude that the $25 million paid by SCI as punitive damages in the settlement is not insurable."  Service Corp., 265 F. App'x at * 1.  The Eleventh Circuit did not reject the reasoning of the district court and this Court cannot draw the conclusion, as suggested by Plaintiff, that the "Eleventh Circuit likely affirmed on the direct liability ground, not the vicarious liability ground."[10]

Third, Plaintiff points out that the opinion was unpublished, meaning that the Eleventh Circuit recognized that the opinion would not add to Circuit law.  The Court recognizes that the Eleventh Circuit opinion is not binding precedent. Nonetheless, as discussed supra, long standing Florida public policy has prohibited the insuring of punitive damages where the party against whom the damages are awarded engaged in a high degree of misconduct.  See Nicholson, 177 So. 2d at 53. Service Corp. follows Florida law on this point and this Order does the same. Indeed, the Court concludes that when the legislature enacted Florida Statute § 768.72, it did not intend to change 50 years of Florida public policy regarding the uninsurability of punitive damages without making any indication that it was doing so.

For the foregoing reasons, the Court grants summary judgment for Defendant on count II for declaratory relief and issues a declaration that the punitive damages award is not covered under the insurance policy.

---

[10] Plaintiff also makes this argument by examining the appellee's brief and concluding that the centerpiece of the appeal concerned "whether punitive damages imposed for the insured's direct liability and own punitive conduct were insurable" (DE 259-2 at 6).  Appellee, however, addressed both arguments in its brief. Given the short length of the opinion, the "centerpiece" of the appeal appears to have been determined less by the parties and more by the issues raised in the district court opinion and which the Eleventh Circuit chose to address.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)      Plaintiff's Motion for Summary Judgment on Count II for Declaratory Relief (DE 73 and 81) is **DENIED.**

2)       Given that Defendant abandoned its argument that the jury awarded direct punitive damages against Ranger, Plaintiff's Motion to Strike (DE 173) is **DENIED AS MOOT**.

3)       Defendant's Motion for Summary Judgment on the Declaratory Judgment claim (DE 241) is **GRANTED**.

4)       Plaintiff's Motion for Leave to File a Surreply (DE 259) is **GRANTED**.

5)      Docket entry 253 was incorrectly docketed as a motion and the Clerk is directed to terminate it for statistical purposes.

6)      The Court will separately enter Judgment for Defendant.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 20th day of December, 2019.

Kenneth A. Marra
United States District Judge